## BOONE v. CORN PRODUCTS RE-FINING CO.
### Civ. A. No. 9368.

United States District Court
D. New Jersey.

June 25, 1952.

William D. Hall, Washington, D. C., for plaintiff.

O'Mara, Conway & Schumann, Edward J. O'Mara, Jersey City, N. J., Charles M. Thomas, Sidney W. Russell, Washington, D. C., of counsel, for defendant.

MEANEY, District Judge.

This is an action instituted by Paul D. Boone against Corn Products Refining Company, in which the plaintiff claims that the defendant infringed his patent, U. S. Patent 2,351,184, granted June 13, 1944. The plaintiff confessedly relies on claims 1, 4, 9 and 10 as a basis for the charge of infringement.

The patent relates to an asserted continuous process for refining of oils of vegetable origin, by the removal of gums and gummy substances. The substance of the procedure pursued in the removal of the gums is first the mixing of crude vegetable oil with an aqueous acidic solution so that the resultant mixture has a pH of the numerical values 3–5. The mixture is then heated to a temperature sufficiently high to coagulate the gums. Thereafter the advancing stream of the mixture with the gums in coagulation or precipitation is cooled to the accompaniment of decreased agitation so that there will result an agglomeration of the precipitated particles. The final step consists of subjection of the mixture, as it results from the last step, to centrifugal action for the purpose of separating the gums from the oil. It is not claimed that any one of these steps constitutes novelty, but rather that the combination of steps with the materials used and the order followed produces patentable innovation.

Needless to say, the fact of the granting of the patent establishes prima facie validity. The defendant contends that it has completely rebutted this presumption, and if that is so, such rebuttal would invalidate the patent and there could be no infringement. The primary attempt by the defendant to demonstrate the invalidity of the patent consists in a consideration of the prior art as disclosed in the following antecedent patents:—Johnson, British 371,503; Sharples, British 481,580; Froding, 2,181,563; Sharples, British 407,995; and the much debated Clayton patents 2,199,041 and 2,205,971, which latter was filed as a continuation in part of a pending application, the filing date of the latter being subsequent to the filing of the Boone application.

Examination of the Johnson, British patent 371,503, indicates that the process was a degumming one, using a small amount of water or a slightly acidic reagent to remove gums from the oil to be

recovered as phosphatides. The specification of the patent suggests that in the case of oils containing large amounts of mucilaginous substances, it is advantageous slightly to acidify the water before its addition. Another step in the Johnson process is agitation of the oil while continuously adding water, the purpose of the mixing being to hydrate the phosphatides to render them insoluble in the oil. The Johnson patent while not specifically mentioning that heat is applied to the mixture as a means of coagulating the gums, does indicate the application of heat to a temperature of 70°C. The next step outlined is cooling after the mixture has passed through a turbo-mixer. This would constitute cooling with decreased agitation after which it passes to a tank for separation of the phosphatides and other mucilaginous substances by settlement. This whole process is a continuous one. The matter of separating the gummy substances from the oils by settlement instead of by centrifugalization, is not material in the analysis of the relationship of this patent (and others referred to) to the prior art. The one method would seem to have been considered as an equivalent of the other. In Johnson, British patent 371,503, this equivalence is indicated.

The Sharples, British patent specification 481,580, speaks of a mixing of the crude oil with water or an aqueous solution for hydration of the gums followed by heating of the mixture with decreased agitation during agglomeration, and then separation of the gums from the oil by centrifugal action or by settlement, all a continuous process.

Froding patent 2,181,563 has reference to complete refinement of crude oils with an alkali reagent, whereas the other patents pretend to the removal of only gums and such mucilaginous matter. In the Froding process the oil and the alkali enter a mixer where violent agitation takes place, the reagent thus being thoroughly distributed to react on the fatty acids, gums and gummy substances. The mixture is then heated to about 122°F. and subsequently cooled to decrease the solubility of the saponified and gummy substances. There then follows a separating action begotten by centrifugal force.

■ The use of an alkali reagent instead of a acidic aqueous solution in the degumming process under Froding patent 2,181,563 in contradistinction to the use of an acidic aqueous solution as used in the Boone patent, is noted. However, prior to the Froding application, the use of water and slightly acidic aqueous reagents for degumming was well known and their use in the subsequent Boone patent with substantial adoption of the other steps of the Froding patent, would constitute but a new and analogous use of an old process. That such a state of affairs suggests lack of invention, is well settled. General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973, and cases cited therein.

■■ Without referring to the disputed Clayton patent applications, the court feels, from extensive consideration of the patents heretofore referred to, that the prior art manifests that the steps in the patent involved in the case sub judice constitute a union of previously disclosed or well known elements of degumming processes, without such striking novelty as would render the outlined process patentable. There is no such "flash of creative genius" as distinguished from "skill of the calling" as has been said by the Supreme Court to constitute basis for issuance of a valid patent. See Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58. There would seem to be no applicable definition of the term "flash of creative genius" as used in the decision of the Supreme Court and so, lack of striking originality and compelling ingenuity has been made the measure applied in determining the question of whether or not there was invention to the satisfaction of this court, and such as would meet with its notion of the Supreme Court's test. After the application of such a test, this court finds no patentability in the Boone process under discussion.

But were the validity of the patent conceded, there would still be the question of

whether the process used by the defendant infringed on the patent rights of the plaintiff. In substance, the basis of such a charge is the use of or presence of an aqueous acidic solution operating on the oil in the process used by the defendant. The defendant denies the use of such a reagent by addition of any substance of acid content, and the testimony would seem to sustain the contention that to the crude oil is added a softened alkaline water reagent having a pH of approximately 8.5. The plaintiff retorts by alleging that in the process of steeping the germ in sulphurous acid before the extraction of the crude corn oil, sulphur dioxide or sulphurous acid is adsorbed by the germ and carried through to the crude oil product. After the steeping, the testimony is that the corn germ is dried in two stages, between which it is milled or rolled for the purpose of effective drying. It is then heated to temperatures above 212 degrees Fahrenheit. $SO_2$, sulphur dioxide, boils at a greatly lower temperature ($14°$ F.) so it would seem that it would be expelled from the germ before extraction of the crude oil. Taste tests applied to the corn germ after drying showed absence of any sulphur dioxide. In addition to the taste test, a standard test, which would show the presence of $SO_2$ in a concentration of 1 part in 250,000, was applied to the crude oil with a negative result. A further suggestion was made that in the original stages of steeping, fermentation would produce some lactic acid which would persist and be present in the crude oil. The testimony does not, in the court's mind, bear out this contention, as any such acid would have been washed out in the washing procedure because of its high solubility. Tests applied to the oil proved negative for the presence of lactic acid. It would therefore appear that the crude oil to be subjected to the degumming process contained no sulphite, sulphur dioxide or sulphurous or lactic acid. Having arrived at such a conclusion, the court feels that even granting the validity of the patent, there was no infringement thereon.

Wherefore the injunction and other relief prayed for are denied.