Jules D. GRATIOT and Air-Maze Corporation, Appellants,

v.

FARR COMPANY, a corporation, Appellee.

No. 13352.

United States Court of Appeals Ninth Circuit.

Oct. 19, 1956.

Rehearing Denied Dec. 4, 1956.

---

Harris, Kiech, Foster & Harris, Ford Harris, Jr., Donald C. Russell, Overton, Lyman, Prince & Vermille, Los Angeles, Cal., Hyde, Meyer, Baldwin & Doran, George S. Baldwin, Cleveland, Ohio, for appellant.

Lyon & Lyon, George L. Duke, Leonard S. Lyon, Richard F. Lyon, Richard E. Lyon, Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and McALLISTER and BARNES, Circuit Judges.

DENMAN, Chief Judge.

Appellants, hereafter Gratiot, appeal from a judgment holding valid a patent owned by the Farr Company, hereafter Farr, and that it was infringed by a device of Gratiot and awarding damages to Farr and enjoining Gratiot from further use of his device. Gratiot contends that the court erred in holding that Farr's patent had not been anticipated and hence that it is valid.

■ The patent awarded is for a filter to free the air from dust. Farr admits that every element in his device has had a precedent use but claims novelty in their combination. In this situation, our approach to the problem of patentable novelty is stated by the Supreme Court to be:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans." Great A. & P. Tea Co. v. Supermarket Corp.,

340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162.

The court's findings, 3 and 4, prepared for the court by Farr, describe the devices as follows:

"3. The Farr patent in suit discloses an air filter panel operating on the principle of impingement of particles on collecting surfaces, which collecting surfaces are wire screen members positioned so that the air is introduced along the planes of the members, and the wire screen members are corrugated to divide the panel in two dimensions into passages through the panel, which passages change abruptly in direction.

"4. At the start of the operation of the air panels of the patent in suit portions of the air flow through the mesh of the screen members into the adjoining passages but as the panels become loaded with dust the flow of air becomes more and more confined to flow through the passages."

■ Gratiot contended that, inter alia, Farr's device was anticipated by the patent granted by France to one Niestle. On this the court found:

"The device of the French Patent No. 739,956 to Niestle, Defendants' Exhibit B, Tab 15, is a filter made of expanded sheets set at right angles to the intended flow of air rather than parallel as in the Farr patent in suit. When made of metal gauze and oiled the expanded sheets would present a solid wall. The French patent to Niestle does not operate by the same mode of operation referred to in Finding 4 or achieve the advantages of the Farr patent in suit."

We do not agree with this finding. The French patent when constructed has the air pass through the same channels as the Farr device. Its claims are:

"1. Filter to arrest dust in a gaseous current, characterized by elements cut to form slots and pressed in such a way as to separate the lips of these slots, while the ele-

ments are arranged with respect to each other, so as to constitute a series of conduits between the lips of the slots, in which the gas to be purified circulates; the dust in the gas is arrested by aqueous or viscous products, such as oil, adhering to the said elements, e. g., by previous immersion.

"2. The elements are superposed in such a way as to constitute zigzag conduits, in which the gas to be purified circulates.

"3. Embodiment of claim 2, characterized thereby, that the lips of the slots of two or more adjacent elements are interconnected and thus assure the formation of conduits of considerable length, forcing the gas to follow a course between sharply staggered points; these marked changes of direction favor the deposition of the dust.

"4. The elements are cut out in metal gauze.

"5. The metal gauze has meshes fine enough for the liquid to fill them by capillary action and form a continuous, thick liquid film, favoring the deposition of the dust suspended in the gas.

"6. Another embodiment, characterized thereby, that the elements are cut out in metal plates perforated with holes of small diameter.

"7. Grooves are made on the solid part of the metal plate constituting the element, causing the oil to be retained on these plates and favoring the deposition of the dust."

The mere fact that the "elements' i. e., the metal gauze screens having larger slot openings than those of the gauze, are placed at right angles to the flow of air is irrelevant, since the angled slot passages surrounded by the screened gauze give exactly the mechanism to collect the dust as the Farr device. This is also shown in figure 5 of the Niestle patent and exhibit KY introduced in evidence.

The fact that in using these identical air passages of the mechanism, the French patent contemplates using oil so heavy that it closes the gauze apertures does not create patentable novelty in having a gauze of larger apertures and using an oil so thin that air may pass through the gauze holes until the deposited dust closes them. Here are none of the "unusual or surprising consequences" of the Great A. & P. Tea Co. case, supra, 340 U.S. at page 152, 71 S.Ct. at page 130:

"This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned, and there is nothing to indicate that the lower courts scrutinized the claims in the light of this rather severe test."

The judgment is reversed and judgment ordered entered for the appellant.