Ralph F. STALLMAN, Appellant,

v.

CASEY BEARING COMPANY, Inc., a corporation, and T. W. Crosby, Appellees.

No. 15328.

United States Court of Appeals Ninth Circuit.

May 31, 1957.

George B. White, Albert D. Elledge, San Francisco, Cal., for appellant.

Naylor & Neal, James M. Naylor, Frank A. Neal, San Francisco, Cal., Mueller & Aichele, Foorman L. Mueller, Chicago, Ill., for appellees.

Before STEPHENS, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

Appellant Stallman sued for damages for infringement of his United States Patent No. 2,334,227. On the trial, with a jury, a verdict was rendered in favor of appellant, finding Claims 3, 4, 5 and 9 valid and infringed. Defendant moved pursuant to Rule 50(b) of the Rules of Civil Procedure, 28 U.S.C.A. for judgment notwithstanding the verdict. The District Court granted this motion upon the ground the patent was invalid.

In so doing, the trial court said:

"* * * solely from the comparison of the prior art with the teaching of plaintiff's patent, without weighing the testimony of any witnesses, expert or otherwise, the only reasonable conclusion that can be drawn is that the patent is invalid."

Appellant claims there was error in such conclusion, that it was not the only reasonable conclusion to be reached, and that reasonable men could reach a different conclusion. The sole question raised by the appeal goes to the propriety of the trial court granting defendant's motion for judgment as a matter of law.

The invention had to do with "roller" or "needle" or "quill" bearings.[1] Such bearings must in operation be separated sufficiently to permit their rotation. They must also be held in some manner to prevent excessive lateral movement. If held closely by flanges or side rails, they accomplish the elimination of endwise movements of the rolls, but this results in friction between the ends of the rolls and the flanges or side rails. If the side rails are sufficiently widely separated to permit lateral or endwise movement, such play, plus the space between the rollers, creates to a greater or lesser degree a "skewing" of the roller; i. e., one side gets "ahead" of the other. Misalignment of such rollers can, and frequently does, result in excessive friction.

Roller bearings connect a pair of relatively rotating parts. A shaft may rotate in a stationary support, with the roller bearings between shaft and support to reduce friction. The outer race is the term applied to the outside surface with which the rollers come into contact. The inner race is the term applied to the inside surface with which the rollers come into contact. The rollers rotate between said races, generally parallel with the moving shaft. Or, the shaft may be stationary and the outer race may rotate around the roller bearings.

Stallman sought to solve the problem of excessive friction by providing (a) sufficient space or tolerance between the rollers and any area they might touch; with (b) a guide rib or rail on the stationary race of the bearing, to prevent misalignment.

Claim 3 envisions "a rotable inner race, and a (relatively) stationary outer race."

---

1. "Needle" or "quill" bearings are relatively long and narrow roller bearings.

Claims 4 and 5 comprise one revolving race, and one stationary race without specification as to which race was revolving and which stationary.

Claim 9 comprises "a cylindrical inner race and an outer race," without specifying that either are revolving or stationary.[2]

Claim 4 further comprises "means carried by the stationary race only, and engageable with the rolls intermediate their ends in the event they become misaligned with their normal position."

Claims 3 and 5 delineate the "means" which projects into "the aligned reduced portions [of the rolls] intermediate their ends," namely a ring or rib, "carried by the stationary race only and projecting into the reduced portion of the rolls, to prevent their longitudinal movement," (Claim 3) or, "to engage shoulders formed by said reduced portions," (Claim 5).

A second ring was permanently contained within said reduced portions to hold the rollers in position when the other race was removed. (Claims 3 and 9.)

Thus by aligning the rolls through projections extending into the reduced portion or portions of the rollers, (smaller circumference and diameter) the friction due to misalignment or skewing was created nearer the center and largely eliminated at the guarded ends of the rollers.

It should be noted that the invention called for one *or several* reduced portions of the rolls. (Fig. 5, Tr. 286.)

This becomes important because of the purported explanation that the "skewing" is avoided by the creation of a fulcrum (point of friction contact, a, Fig. 7, Tr. 286) closer to the center of the roll than is possible if the point of friction contact is at either end of the roller. Such a singe fulcrum is lost, of course, if there is more than one reduced area or portion of the roll, and more than one rib or guide projecting therein.

■ No claim is made that there should be any particular placement of the recessed portion of the roll in the patent sought to be enforced. If the placement of the recessed portion is critical, there is no disclosure thereof in the patent. If the dimension of the recessed portion, or of the rib, is critical, there is no disclosure thereof in the patent. If the tolerance, or play, between the recessed portion and the rib or ring is critical, there is no disclosure thereof (save one reference to "a very small tolerance").

2. The Claims read:

"Claim 3. A bearing comprising a rotatable inner race and a relatively stationary outer race, rollers interposed between said races and having aligned reduced portions intermediate their ends, a ring carried by the outer race and projecting into the reduced portions of the rollers to prevent their longitudinal movement and a second ring registering with and permanently contained within said reduced portions to hold the rollers in position in the outer race when the inner race is removed.

"Claim 4. A bearing comprising a revolving race and a relatively stationary race, a plurality of rolls interposed between said races, and means carried by the stationary race only and engageable with the rolls intermediate their ends in the event they become misaligned with their normal position.

"Claim 5. A bearing comprising a revolving race and a relatively stationary race, a plurality of rolls interposed between said races, and having reduced portions intermediate their ends, and means carried by the stationary race only and projecting into the reduced portion of the rolls to engage shoulders formed by said reduced portions in the event of misalignment of the rolls.

"Claim 9. A bearing comprising a cylindrical inner race and an outer race, a plurality of rolls having reduced portions intermediate their ends interposed between said races, a ring carried by the outer race and registering within the reduced portion of the rolls to engage the rolls in the event they become misaligned with their normal position and a second ring contained by said reduced portions of the rolls adjacent the inner race to retain the rolls in place against the outer race when the races are separated."

[Tr. 289]

If the number of recessed portions is critical, again, there is no disclosure thereof in the patent. It is the claim, of course, which measures the grant to the patentee. Graver Tank & Mfg. Co. v. Linde Air Products Co., 1948, 336 U.S. 271, 277, 69 S.Ct. 535, 93 L.Ed. 672 and cases cited therein; Winslow Eng. Co. v. Smith, 9 Cir., 1955, 223 F.2d 438, 443–444.

Saying this, we turn to the prior art. Stallman's application was filed August 9, 1941, and the patent in suit was issued November 16, 1943.

(1) The British Zahn Patent, No. 17,-841 (accepted January 10, 1907) (Defendant's Exhibit O) disclosed the recessed roll, *with the recesses at the two ends of the roll,* and two end flanges projecting into the recesses.

"The frictional engagement of the projected flange with the shoulder of the bearing member * * * (with) resulting increase of friction at the advanced end will tend to retard the same and allow the other end to swing forward, thus righting the roller."

Haddan's Complete Specification, (Zahn Patent) (Tr. 292).

This was the claimed functional result of the Stallman patent—the elimination of skewing.

(2) Also in Defendant's Exhibit O, The Kempster Patent, No. 585,580, (issued June 29, 1897) showed the projecting rib and the recessed roll (Tr. 295), with the rollers "being held positively in proper alinement therewith by the rib 4 which also takes directly all end thrust of said rolls * * *" (Tr. 295, 2 Col., ll. 71 to 84).

(3) Defendant's Exhibit P, The Heim Patent, No. 1,885,914 (issued November 1, 1932) showed the centrally recessed or grooved rollers, with a square or circular ring extending into the recessed portion of the rolls; and an inside ring to maintain the rollers in position.

(4) Also in Defendant's Exhibit P is the Rydbeck Patent, No. 1,979,707 (issued November 6, 1934) which shows one or more centrally recessed "circumferential grooves" with one or more retainer rings either inside or outside the grooves "to resiliently urge them (the roller bearings) toward the bearing member at the other side." This invention shows no rib or ring or band projecting into the recessed grooves.

A comparison of Stallman's claims with those cited above indicates each and every item claimed by Stallman has been anticipated in one or more of the prior patents.

This prior art, and more, was discussed and commented upon by the trial court, in its own way, in coming to its conclusion that the verdict of the jury could not stand, because the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict. Brady v. Southern Ry., 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239; Cutter Laboratories v. Lyophile-Cryochem Corp., 9 Cir., 179 F.2d 80, 84.

We agree with the District Court in its conclusion, both as to the law applicable to the evidence, and the legal conclusion it came to thereon. The only reasonable conclusion is that the patent is invalid by reason of the prior art. General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 249, 66 S.Ct. 81, 90 L.Ed. 43; Gratiot v. Farr Company, 9 Cir., 237 F.2d 940.

The judgment is affirmed.