SIMMONS COMPANY, Plaintiff,

v.

SEALY, INCORPORATED, and Sealy Mattress Company, Defendants.

SEALY, INCORPORATED, and Sealy Mattress Company, Plaintiffs,

v.

SIMMONS COMPANY, Defendant.

Nos. 54C143, 56C203.

United States District Court
N. D. Illinois E. D.

Dec. 18, 1957.

Soans, Anderson, Luedeka & Fitch, Chicago, Ill., for Simmons Co.

Byron, Hume, Groen & Clement, Chicago, Ill., for Sealy Inc., and Sealy Mattress Co.

CAMPBELL, District Judge.

Plaintiff, Simmons Company, hereinafter referred to as "Simmons", brought this action (Case No. 54 C 143) against Sealy, Incorporated, and Sealy Mattress Company, hereinafter referred to as "Sealy", charging infringement of two patents owned by it, Bayer No. 2,333,-087, and Woller No. 2,595,038. The patents involve sofa beds. Case No. 54 C 143 extends only to Sealy beds type A and B.

Case No. 56 C 203 was brought by Sealy for a declaration that Sealy bed type C does not infringe Woller No. 2,595,038, and for a declaration that said patent is invalid.

The two cases were consolidated for trial and Simmons assumed the burden of plaintiff in the consolidated cases while Sealy took the position of defendant in both.

The resulting dispute between the parties is as follows:

Simmons maintains that Sealy beds type A, B and C all infringe Woller No.

2,595,038, and that type B in addition infringes Bayer No. 2,333,087. Sealy maintains that its beds type A, B, and C do not infringe Woller No. 2,595,038 and that said patent is invalid. Sealy admits that type B infringes Bayer No. 2,333,-087 but maintains that Bayer is invalid.

Against beds type A, B and C Simmons asserts claims 3, 4 and 5 of Woller No. 2,595,038. Those elements of claims 3, 4 and 5 which describe a sofa bed with a stationary frame; a bed bottom comprised of a plurality of foldable sections; and a mounting means permitting the folded sections to move inwardly into the frame to form a sofa seat, admittedly disclose nothing new and are covered by numerous prior patents.

The dispute here is necessarily limited to those elements of claims 3, 4 and 5 which have to do with certain linkage which will cause the foot section of a four section bed to hold its folded position against an intermediate section, while the bed is folded away into a sofa. The two sections to be held together are marked by Woller as 4 and 6.

Claim 3 calls for "means interconnecting and carried by said two sections (4 and 6) for drawing said two sections toward each other, and means carried by one of the plurality of sections and reasonably engageable with said interconnecting means for effectively operating said interconnecting means by the movement of said foldable sections relative to the frame * * *."

Claim 4 calls for "means interconnecting and carried by said two sections (4 and 6) for drawing said two sections toward each other, and a link carried by one of the plurality of sections at one end thereof and having a lost motion connection with said interconnecting means * * *."

Claim 5 calls for "interconnecting means carried by said two sections (4 and 6) for drawing said two sections toward each other, said interconnecting means including a member connected with the upper of said two sections and having thereon a pin, and means carried by one of said plurality of sections and releasably engageable with said pin * * *."

The operation of this Woller linkage as indicated in Woller, Figs. 1, 3, 4, 5, 7, and 8 is as follows:

The foot section, section 6, is raised about its pivot 26 until the pin-and-slot connection of gravity operated latch 30 catches the pin 34. Further movement then causes the hinge, section 5, to rotate around pivot 25 and move pin 52 on the link 50, back along the slots in intermediate bed section 4 and the actuating link 54. At a certain point in the movement, the gravity latch 30 is inverted to lock the bed sections 5 and 6 together about the pivot 26. When the three folded sections, 4, 5 and 6, are raised as indicated in Fig. 6, and thrust back to the sofa position as shown in Fig. 8, a recess in the slot of actuating link 54 hooks the pin 52 and will draw sections 4 and 6 towards each other until the foot section, section 6, rests on the roller 47 as shown in Fig. 8.

The idea of providing some means whereby the foot section of a folding bed could be made to hold its folded position against an intermediate section while the bed is folded away, is not new. It is true that all prior patents use, for this purpose, either the "correlated linkage" type of construction (see e. g., Thomas No. 2,007,988) or the "locking hook" (see e. g., Dyke No. 1,127,874; Andren No. 1,155,779 and De Does No. 1,-210,432).

If the means for obtaining drawing action described in Woller claims 3, 4 and 5 are distinguishable from those disclosed in prior patents it is only because Woller is thinking of pin-and-slot connections, as indicated in Figs. 1, 3, 4, 5, 7 and 8.

It cannot be contended that pin-and-slot connections used for the purpose of holding hinged objects in a certain position are of themselves inventions. And I hold that no invention was required to add such connections to a foldable sofa bed. The disclosures of claims 3, 4 and 5 of Woller can hardly

be said to have "advanced the frontiers of science", General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 249, 66 S.Ct. 81, 84, 90 L.Ed. 43. The disclosures merely show the "adaptation * * * of old or well known devices for a new use." Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 40, 86 L.Ed. 58; see De Forest Radio Co. v. General Electric Co., 283 U.S. 664, 682, 51 S.Ct. 563, 75 L.Ed. 1339. This is not a case where the whole "exceeds the sum of its parts." Great Atlantic & Pacific Tea Co. v. Super Market Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162.

Accordingly I hold that Woller No. 2,595,038, claims 3, 4 and 5 are invalid for lack of invention. Cf. Simmons Co. v. A. Brandwein & Co., 7 Cir., 250 F.2d 440.

I now come to consider the question of infringement as to Woller No. 2,595,038. The operation of the Woller means for holding the foot section, section 6, in its folded position against the intermediate section, section 4, while the bed is folded away into a sofa, has been described. The operation of the accused constructions A, B and C cannot be likened to that of Woller.

Type A. When the foot section of type A, section 6, is folded completely into its position overlying the intermediate section, section 4, and thrust back into sofa forming position, section 3, the head section is caused to rotate about pivot 7. This action pushes link 33 forward which causes locking hook 32 to rotate about its pivot 36. The extreme end of locking hook 32 then hooks pin 24 on foot extension 23. This last action locks sections 4 and 6 together.

Type B. The operation of type B is essentially the same as that of type A, except that in type B the locking hook 134 is based on a sliding pivot 130, connected not with section 104 but with link 128. The hooking effect is thus produced by the forward movement of link 133 and the backward movement of link 128.

There is nothing in types A and B which would approximate to a "means * * * carried by one of the plurality of sections * * * and having a lost motion connection with said interconnecting means."

The scope of every patent is limited to the invention described in the claims contained in it, read in the light of the specification, Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 510, 37 S.Ct. 416, 61 L.Ed. 871. The specifications of Woller show that the "lost motion" connection described in the patent, is a pin-and-slot connection. This connection holds sections 6 and 4 together through the intervention of section 5. The accused types A and B employ a hook which directly holds section 6 and 4 together. The idea of a hook to hold two hinged objects together is as old as the idea of a hook itself. Besides, the hook has been put to the use involved in types A and B by Dyke No. 1,127,874; Andren No. 1,115,779 and De Does No. 1,210,432 all prior to Woller.

The doctrine of "equivalents" (Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097) does not aid Simmons here. The locking hook construction of types A and B is the equivalent of Dyke, Andren and De Does. If it is also the equivalent of Woller, Woller must be expanded to include the prior art of Dyke, Andren and De Does.

Apart from the file wrapper estoppel which is urged by Sealy against such an expansion of Woller, Simmons cannot be permitted to contract the scope of its claims under Woller for purposes of its validity and to expand them for purposes of infringement.

Type C. The operation of type C is that when the foot section, section F4, is folded into its position overlying the intermediate section, section F2, and thrust back into sofa forming position, section F1, the head section, rotates about its pivot P1, and pushes link L3 forward. This movement is communi-

cated to L4 which rotates about its pivot P10, pulling link L7 back and causing link L8 to rotate about its pivot P13. This last motion pulls link L10 down and link L9 up. L10 and L9 being connected to sections F4 and F2 respectively, the motion causes the two sections to be pulled together.

Needless to say, there is here no "releasably engageable" means; no "releasably engageable" pin; and no "lost motion" connection. Type C is a correlated linkage type construction exemplified by such old and well known mechanisms as elevator gates and "lazy tongs." The correlated linkage type of construction has been put to the use involved in type C by Thomas No. 2,007,988, issued July 16, 1935.

Accordingly I hold that the disputed elements of claims 3, 4 and 5 of Woller No. 2,595,038, properly interpreted in the light of the specifications as involving pin-and-slot type connections, do not read on the accused types A, B and C.

Simmons charges infringement of Bayer No. 2,333,097 only with respect to Sealy type B. Sealy admits infringement, but maintains that Bayer, in so far as infringed by type B, is invalid. The only important difference between types A and C on the one hand and type B on the other, is that type B has a pair of links 110 and 111 which are to be found as links 74 and 75 in Bayer. Accordingly the elements of claims 1, 6, 7 and 8 of Bayer, which Simmons asserts against type B, are those elements which refer to the two links.

The operation of these links as described in the claims and shown in Figs. 1—12 of Bayer, is that they assure that the head section, section 22, will move in a fixed path when the bed is folded or unfolded, from a horizontal position to a vertical position and vice versa. The use to which links 110 and 111 on Sealy type B are put is the same. However, Sealy maintains that this use has been anticipated by Tauber, No. 1,216,627 issued Feb. 20, 1917.

The links on Tauber which are alleged to correspond to links 74 and 75 on Bayer are the links 44 and 44. Simmons contends that, in practice, the linkage connections of Bayer and Tauber are entirely different and bear no resemblance to each other. It is true that links 44 and 44 of Tauber are not attached to the head section, section 26, and do not directly cause the head section to move from a horizontal into a vertical position, when the Tauber bed is folded, and vice versa, when it is unfolded. The Tauber links do, however, cause link 42 to describe a fixed path downwards from a horizontal position to a vertical position, when the bed is folded, and vice versa, when it is unfolded. The effect of this motion is to draw section 24 of the Tauber bed downwards into its folded position as shown in Fig. 3, and upwards into its unfolded position as shown in Fig. 1.

The function of the two links on Tauber is the same as that of the two links on Bayer. Although that function is not performed in Tauber directly with respect to a section of the bed and is not performed for the same purpose as that in Bayer, I hold that it is no invention to adopt that function directly in respect to a section of the bed and for the particular purpose disclosed by Bayer. I hold that Bayer, in the elements in which it is asserted against type B, is invalid as having been anticipated by prior art patents and for lack of invention.

It is accordingly ordered, adjudged and decreed, for the reasons stated that claims 3, 4 and 5 of the Woller patent here in suit, are invalid and also not infringed; and that claims 1, 6, 7 and 8 of the Bayer patent here in suit are invalid. Case No. 54 C 143 is hereby dismissed at plaintiff's costs. In Case No. 56 C 203 declaratory judgment is hereby entered in accordance with the prayer of plaintiffs' complaint and at defendant's costs.