49 CCPA

### Application of Karl E. PRINDLE and Ross C. Reed.

### Patent Appeals No. 6714.

United States Court of Customs and Patent Appeals.
Jan. 12, 1962.

ranged in substantially co-extensive parallelism, each of said staples comprising a halogen-containing flexible organic film incapable of self-sustaining combustion and slit to a ribbon having substantially greater length than width and a greater width than thickness, a specular metal deposit on at least one surface defined by the length and width of said ribbon, the length of each staple not exceeding a ratio of approximately 1500 to 1 with respect to its width."

The references relied on are

| | | | |
|---|---|---|---|
| Clune | 1,441,266 | January | 9, 1923 |
| McManus et al. | 2,382,432 | August | 14, 1945 |
| Croze et al. | 2,689,805 | September | 21, 1954 |
| Stein | 2,872,341 | February | 3, 1959 |
| (filed September 10, 1954) | | | |

Appellants' application relates to tinsel intended for use in decorating Christmas trees, either by draping lengths over the tree, more or less individually, as so-called "icicles," or by attaching shorter lengths to a central cord to provide a garland type of decoration.

The tinsel is produced by applying a thin coating of a metal such as aluminum to a thin film or sheet of plastic material and cutting the sheet into narrow ribbons of the desired length. The base film may be an organic halogen containing polymeric material which will not support combustion. Known thermal evaporation methods are employed to provide the aluminum deposits which may be as thin as 100 Angstrom units or less. Colored coatings may be applied to the tinsel if desired.

The application also discloses packaging bundles of tinsel strands of substantially equal lengths.

The Clune patent discloses packaging tinsel or metal foil strips utilizable for ornamental displays such as Christmas tree decorations.

The portion of the McManus et al. patent relied on discloses flexible strip backings of various plastic materials, includ-

Ely, Pearne & Gordon, Albert L. Ely, Jr., Cleveland, Ohio, for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection of claims 1 to 10, and 17 to 19, inclusive, of appellants' application, Serial No. 774,970, for a patent on "Tinsel."

Claims 1 and 9 are typical of the appealed claims and read:

"1. A tinsel staple comprising a narrow ribbon having a metal deposit coating its surface, said ribbon consisting esentially of a self-extinguishing organic plastic polymer.

"9. Christmas tinsel comprising a package of multitudinous staples of rectangular cross-section ar-

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

ing chlorinated rubber, on which thin films of a metal, such as aluminum have been vapor deposited. The patent states that the product may be of "foil thickness" and discloses its use for decorative purposes.

The Croze et al. patent discloses a ribbon of polytetrafluoroethylene film having an extremely thin coating of a metal such as aluminum or gold vacuum deposited thereon. It is indicated that the ribbon may be of a thickness of .008 to .0085 inch and that gold has been deposited in films of the order of 500 to 1000 Angstrom units in thickness; "but with much thicker coatings, the stiffness of the metal tends to reduce the flexibility of the sheet * * *."

The Stein patent discloses a layer of a fluorocarbon resin plastic, such as polytetrafluoroethylene and polytrifluorochloroethylene, to at least one side of which a coating of aluminum or other metal is applied directly by thermal evaporation in a vacuum chamber.

Claims 1 to 8 and 17 to 19, drawn to a tinsel strand or "staple," were rejected as unpatentable over Croze et al., Stein or McManus et al. Claims 9 and 10, directed to a package of such "staples," were rejected as unpatentable over Clune in view of the same patents. The board noted that the examiner treated Stein and McManus et al. as cumulative to Croze et al., but stated that it regarded the disclosure by McManus et al. of the use of their foil for decorating purposes as teaching the use intended by appellants. The board was also of the opinion that it would be obvious to the worker of ordinary skill in the art, with the McManus et al. and Clune patents before him, to combine their teachings in the making of packages of Christmas tinsel as appellants do.

Appellants state that ultra-thin deposits obtained by vacuum metalizing on an incombustible film base do not burn, and advance that as an unexpected property, the discovery of which resulted in their finding a new use for metalized films as Christmas tinsel. They refer to Gillman v. Stern, 2 Cir., 114 F.2d 28, and other similar decisions for the proposition that even slight physical changes in an old article may be patentable where a new use results.

In that connection, appellants rely here, as below, on the words "tinsel staple," particularly the word "staple," [1] as defining a structural limitation distinguishing the claims on appeal from the metalized films disclosed in McManus et al., Croze et al., and Stein. Appellants' basic contention is that the term "staple" connotes the limitation of *definite* length as opposed to the allegedly indefinite length of a "ribbon" referred to by Croze et al.

The board disposed of that contention, and we think correctly, in the following manner:

"We are unable to see, based on the foregoing definitions, that the quoted terminology of the claims requires anything more than a long, thin, flat material having a glittering or sparkling appearance. We are equally unable to see how this concept could distinguish from any conventional sheet material made under the teachings of the references.

"Insofar as the term 'tinsel' conveys the intention to use the material of the references for ornamental or decorative purposes, it is well-settled that such intended use expressions cannot serve to patentably distinguish claims from references which otherwise meet them.

\* \* \* \* \* \*

"Furthermore, we consider that the McManus et al. patent, at page 10, column 2, lines 55 through 57, in its disclosure that the foil may

---

1. Webster's New International Dictionary, 1949, defines "staple" as:
"\* \* \* 6. A fiber of raw wool, cotton, flax, and the like, in its natural state, or when carded or combed; the average of comparative length, fineness, condition, of any kind, lot, or esp. grade, of such fibers, as mohair staple in five to six inches; tow is flax with short staple."

be used for its 'decorating characteristics' constitutes a teaching of the use here intended."

We agree with the board that the disclosure by McManus et al. of the use of their metalized plastic for decorative purposes suggests its use for Christmas tree decorations. That suggestion makes obvious the concept of providing the flexible metalized plastic of that patent in the form of narrow strands of definite length for draping over the boughs as tinsel or "icicles" in the manner that Christmas foil is commonly used. It likewise would be obvious to size the similar aluminized plastic ribbon of Croze et al. and Stein for use as Christmas tinsel in the same manner.

■ Among the base materials used to make the aluminized ribbons of Croze et al. and Stein are polytetrafluoroethylene and polytrifluorochloroethylene, which materials are admittedly noncombustible. As indicated above, aluminized staples of such materials would have been obvious from the prior art. Further, such staples will not support combustion. It is the discovery of that inherent latent property which appellants contend resulted in their finding a new use. However, mere *recognition* of those latent *properties* does not render the otherwise obvious staples unobvious and thereby patentable. See General Electric Company v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S. Ct. 81, 90 L.Ed. 43.

The thinness of the film and the resulting limpness which permits the tinsel elements to drape are urged by appellants as of patentable significance. However, even aside from Croze et al., it is clear that metalized films for use as Christmas tinsel should be thin enough to drape freely. Appellants have not shown that, in providing films and deposits of the dimensions they disclose, they have done any more than follow procedures already taught in the art and available to a person of ordinary skill seeking to provide Christmas tree tinsel of materials disclosed by McManus et al., Croze et al. and Stein.

Claim 8 recites the provision of a color layer modifying the appearance of the metal deposit. Appellants do not argue that that feature has patentable significance, apparently recognizing its disclosure by both McManus et al. and Croze et al.

In connection with claims 9 and 10, drawn to a package of tinsel, it would of course be obvious to pack Christmas tinsel of metalized plastic foil in the same arrangement which Clune packs his Christmas tinsel of "metal foil." Appellants do not appear to make a contrary contention.

■ Appellants argue that their tinsel has enjoyed prompt commercial success and have introduced evidence in support thereof. However, evidence of commercial success is considered only where the issue of patentability is otherwise doubtful. In re Patton et al., 234 F.2d 499, 43 CCPA 974. We have no doubt here that what appellants have done is no more than what would have been obvious to the skilled artisan with the references before him. Certainly appellants have failed to establish any right to a monopoly by merely following the teachings implicit in the art.

■■ A final point raised by appellants is the refusal of the examiner to enter an amendment submitted after final rejection. Appellants allege that such action "appears to" estop the Patent Office from contending that the prior art meets claims 17, 18, and 19. They also assign as error the board's refusal to disturb that action. We find nothing in the record to support the estoppel contention, nor any reason to depart from our settled practice noted in In re Lillich, 245 F.2d 471, 44 CCPA 991 of refusing to review the action of the board in denying requests by applicants to amend appealed claims.

The decision is affirmed.

Affirmed.

SMITH, Judge (dissenting).

While I agree with the majority that claims 9 and 10 for packaging the tinsel

are obvious over the Clune reference, I cannot agree with its conviction that the appellants' invention, the tinsel itself, as claimed in claims 1 to 8 and 17 to 19 inclusive, is obvious over the other prior art cited.

Appellants' invention is a modification of old products which creates a new and commercially better product. It is this category which Judge Learned Hand described as:

"* * * one in which the inventor has culled this and that out of nearby arts, and so formed a combination nowhere before existing. It has been a success; it has substantially driven out earlier cumbersome methods, it has enabled the art to do with ease what before it could only do slowly and imperfectly. The result seems to us a genuine invention, and we so hold." [Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 18 F. 2d 66, 68, 69 (C.C.A.2d), cert. denied, 274 U.S. 753, 47 S.Ct. 765, 71 L.Ed. 1333.]

The majority has not analyzed the invention in the manner prescribed by Judge Hand in Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., supra:

"* * * We are to judge such devices, not by the mere innovation in their form or material, but by the purpose which dictated them and discovered their function. * * *"

The "purpose" which dictated the appellants' invention, as explained in their specifications, was that Christmas tinsel, as was commonly used, had several disadvantages. It was flammable; it was not strong and was subject to matting, making it unattractive for reuse; and the lead strips presented a potential poison hazard to children. With these problems in mind, appellants perfected a tinsel composed of a halogen-containing polymer with a thin metallic coating which was non-flammable, did not mat and was non-toxic. The references cited by the board in its rejection do not disclose such a "staple" having the above combination of characteristics.

The affidavit of Prindle aptly points out the unobviousness of appellants' discovery that their thin metallic coating was non-flammable. I disagree with the board in its assumption that the claimed invention relates to an "old thing." The thing claimed is "a tinsel staple" of a new type. In its decision, the board merely states:

"We have considered appellants' allegation, on page 2 of their brief, that they have discovered the "wholly unexpected and unpredictable characteristic" of the claimed material, viz., its noninflammability, which adapts it for its intended use. We have also considered the Prindle affidavit in this respect. However, we are not persuaded by this factor, since an increase in knowledge of its properties cannot render an old thing patentable."

I do not agree with either the board or with the majority that there is "no doubt" that the invention claimed is obvious over the references cited. I have considerable doubt as to its "obviousness" and am, therefore, willing to resolve that doubt by the showing of commercial success of appellants' invention which is amply presented in the record by appellants' exhibits D through F and by the affidavits of Ely and Campbell.[1] Evidence of commercial success "should, in a close case, tip the scales in favor of patentability." Goodyear Tire & Rubber Co. et al. v. RAY-O-VAC Co., 321 U.S. 275, 279, 64 S.Ct. 593, 595, 88 L.Ed. 721 (1944).

For the foregoing reasons, I would reverse the decision of the Board of Appeals in rejecting claims 1 to 8 and 17 to 19.

[1] I also take judicial notice that tinsel manufactured by appellants or by a licensee thereof is currently being sold at a number of retail stores herein the Nation's capital.