SCHOLL, INC., Plaintiff-Appellee,

v.

S. S. KRESGE COMPANY,
Defendant-Appellant.

No. 77–1308.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1977.

Decided July 14, 1978.

Rehearing and Rehearing En Banc
Denied Aug. 22, 1978.

---

Richard E. Alexander, Chicago, Ill., for defendant-appellant.

James Van Santen, Chicago, Ill., for plaintiff-appellee.

Before SPRECHER and TONE, Circuit Judges, and GRANT, Senior District Judge.*

TONE, Circuit Judge.

The issue in this case is whether a combination patent on an exercise sandal is invalid for obviousness under 35 U.S.C. § 103. The District Court, after a bench trial, held the patent valid and infringed. We reverse the judgment.

Reduced to its essentials, the alleged invention consists of changing the position provided for the big toe in the sole of the sandal. A prior German patent, known as the Berkemann patent,[1] taught the design of an exercise sandal that was the same in the following respects to that of the Bittner, et al., patent[2] in suit:

> (1) a rigid sole block in the shape of the foot,[3]
> (2) with a loose fitting strap fitting across the foot to hold the sandal on the foot, and
> (3) a ridge on the sole block on which the toes rest.

The Berkemann sandal was sold to the general public at least as early as 1950, and some 25,000,000 pairs of that sandal were sold in 50 countries, including the United States, between 1950 and 1970.[4]

The patent in suit merely called for two changes in the Berkemann design, neither of which was new, *viz.*, eliminating the part of the ridge under the big toe and providing a slight depression under that toe.[5]

As early as 1938 Dr. Phillip R. Brachman, one of the medical experts who testified at

---

\* The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. German Utility Model Patent 1,775,539, granted July 29, 1958.

2. U.S. Patent No. 3,063,457, filed October 14, 1959, issued November 13, 1962.

3. Although not mentioned in the Berkemann patent, the sole of the sandal made and sold under that patent was also contoured to accommodate the shape of the bottom of the foot.

4. The Berkemann patent was not cited to the Patent Office in the application proceedings leading to the issuance of the patent in suit, but the District Court found that a general description of a sandal of the Berkemann type was

provided and therefore the examiner was not misled.

5. The single claim of the patent is as follows:

A foot exerciser sandal comprising a sole block of rigid material contoured in keeping with the plantar surface of a human foot and having a depression formed therein for receiving the great toe, a transverse elevation on said block positioned to underlie the outer four toes on a foot, said elevation terminating inwardly and abruptly adjacent the location of the great toe, strap means secured to said block in position to embrace the foot of a user in the region of the metatarsal arch, said strap means being the only means for retaining the sandal on the foot of a user, whereby gripping of said elevation by the outer four toes maintains the heel portion of the block adjacent the heel of the foot during walking.

the trial (who was originally identified as plaintiff's expert but who was called as a witness for the defendant), wrote a book [6] in which he discussed the idea of a ridge for the toes and recommended that the ridge not be extended to the area under the big toe.[7] A depression for the big toe anterior to the ridge is not mentioned in the Berkemann patent, but such a depression appears in the exemplification of that patent that is in evidence.

A depression for the big toe in relation to the other toes and the ball of the foot was taught as anatomically correct in the Stroup patent issued in 1951,[8] which applied that design to the sole of a shoe. In addition, a 1941 publication by Musebeck Shoe Company entitled "Your Patient and His Feet" taught "hollow[ing] out" the insole to fit the contours of the foot, including "the ball of the great toe."

The Bittner patent is thus a combination patent, combining Berkemann with Stroup, Musebeck Shoe Company, and Brachman. It amounted to changing the Berkemann sandal by honing off the ridge under the big toe as advocated by Brachman and providing a slight depression as taught not only by the production model of the Berkemann sandal but also by the Stroup patent and the Musebeck Shoe Company book.

The district judge, although stating that he "had enough trouble deciding it wasn't an obvious modification of Berkemann," [9] made an oral finding that the modification resulted in "some anatomical, or therapeutic, orthopedic benefit, improvement." He later entered written findings [10] that the modification was

a novel and useful combination of elements having a unique interdependent functional relationship, thereby affording a synergistic result which in and of itself was non-obvious, namely, the automatic separation of the great toe from the other four toes, resulting in some anatomical advantage and beneficial orthopedic or podiatric effects on the foot as well as promoting increased comfort.

The written findings also stated,

The differences between the prior art and the claim of the patent reside in the combination of a metatarsal crest which underlies the four lesser toes, but terminates short of the great toe, and a depression to receive the metatarsal head of the great toe, both features being provided in a contoured rigid sole block having a strap means as the sole means of retaining the sandal on the foot. That combination constitutes a patentable improvement over the prior art.

In addition the court found that the combination would not have been obvious to a person having ordinary skill in the art.[11]

---

6. The date stated in the text appears from Brachman's testimony. An extract from a later (1966) edition of the book, entitled *Mechanical Foot Therapy*, is in evidence.

7. Dr. Brachman also testified that during the period prior to the patent in suit he modified the Levy Mould, used to construct a ridge under the interphalangeal areas of the toes in custom-made therapeutic appliances, by removing that portion of the mould extending under the great toe. Dr. Levy's ideas are stated in Levy, Pod.D., *An Appliance to Induce Toe Flexion On Weight Bearing*, Pages 24, 26, Journal of National Association of Chiropodists, Vol. 40, No. 6, June, 1950; Schuster, Pod.D., *Modifications In The Construction Of The Levy Mould*, Page 33, Journal of National Association of Chiropodists, Vol. 40, No. 6, June, 1950; Levy, Pod.D., *Structural Changes In The Levy Mould*, Page 37, Journal of National Association of Chiropodists, Vol. 41, No. 2, February, 1951.

8. U.S. Patent No. 2,539,557, issued January 30, 1951.

9. This statement was made in the course of explaining why the court did not find wilful infringement.

10. The written findings were submitted by counsel for the prevailing party and entered following revisions by the court that are not material here.

11. The relevant art was found to be "the sandal art," which was practiced by "podiatrists and other practitioners who investigate and treat disorders of the feet," the requisite level of skill in which "is attained, if not surpassed, by orthopedic and podiatric surgeon specialists." The level of ordinary skill in that art, the court went on to say, "is surpassed by experts of the extraordinary and superior skills" exemplified by the experts who testified in the case, Dr.

Although we base our decision on another ground, we note that the evidence of the orthopedic usefulness asserted in the patent specifications for the Bittner modification is slight. The modification has little to do with the ostensible [12] function of the patented sandal, which is to exercise the foot, because the exercise occurs through the gripping action of the toes to keep the sandal from falling off when the wearer is walking, and this occurs regardless of the position of the toes. The orthopedic effect asserted for the modification in the specifications is that, by providing "an anatomically correct positioning of the toes when the sandal is put on," the modification "prevent[s] the formation of crooked toes, and alleviate[s] or counteract[s] conditions such as hallux valgus." (Hallux valgus is "angulation of the great toe away from the midline of the body, or toward the other toes." *Dorland's Illustrated Medical Dictionary* 642 (24th ed. 1965).) The District Court's finding that the modification actually produced "some" orthopedic benefit apparently was based on the view that depressing the position of the big toe had "some" deterrent effect on its lateral movement. That effect was described by Dr. Larson, the only expert who testified specifically concerning the orthopedic benefit to be derived from the modification, as slight and having a "very small amount" of medical signifi-

cance. The record is thus extremely weak on the issue of whether the alleged invention produces an orthopedic benefit of any consequence, but, even if plaintiff's proof on this point had been satisfactory, the patent could not be sustained for a reason to which we now turn.

Plaintiff concedes in its brief that "improved comfort alone would not have been sufficient" to entitle it to prevail on the obviousness issue, which we take to be a concession that honing off the ridge and providing a depression under the big toe to make the sandal more comfortable was obvious. Even without this concession, we would have no difficulty in reaching the same conclusion.

 The obviousness of the combination of old elements for the purpose of promoting comfort disposes of the case. Patentability may not rest upon the discovery of a new use or a previously unnoticed advantage of an old structural element. *General Electric Co. v. Jewel Incandescent Lamp Co.*, 326 U.S. 242, 247–249, 66 S.Ct. 81, 90 L.Ed. 43 (1945); *Preuss v. General Electric Co.*, 392 F.2d 29, 33–34 (2d Cir.), *cert. denied*, 393 U.S. 834, 89 S.Ct. 105, 21 L.Ed.2d 104 (1968); *Gould-National Batteries, Inc. v. Gulton Industries, Inc.*, 361 F.2d 912, 914 (3d Cir. 1965); *cf. Research Corp. v. NASCO Industries, Inc.*, 501 F.2d

Brachman, previously mentioned, and Dr. Carroll B. Larson, an expert called by defendant. In considering what would have been obvious to physicians of ordinary skill, it is to be noted that the essential idea of the patent, eliminating the ridge under the big toe, was recommended in Dr. Brachman's book published in 1938 and that Dr. Larson testified that the release of tension in the big toe created by allowing the big toe to rest on a flat weight-bearing surface "has been known for at least fifty years." As for providing a depression for receiving the big toe, Stroup had previously taught that such a depression is anatomically correct, *i. e.*, increases comfort. See text, *supra*. In fact, at one point during direct examination, Dr. Brachman acknowledged that it has been known for "probably a million years or so" that allowing a depression for the big toe is anatomically correct. This evidence undermines Dr. Brachman's opinion and the District Court's finding that the Bittner sandal would not have been *obvious to a person ordinarily skilled in the*

sandal art. We add that we do not share Dr. Brachman's apparent skepticism concerning the size of the readership of his book on foot therapy, for, in view of his superior qualifications, as noted by the District Court, it is reasonable to assume that many physicians of ordinary skill would have consulted the book.

12. Dr. Larson, whom plaintiff characterizes as "one of the most renowned orthopedic specialists in the United States," agreed with the District Court's statement that the patented sandal "is really essentially a comfortable device, and to call it an exercise sandal is gilding the lily . . . ." He could "see no difference" between the Berkemann and Bittner sandals "in regard to strengthening of the entire structure of the foot," prevention of arch sag, relieving stiffened joints, causing calluses to disappear, or stimulation of circulation of the blood. The Bittner patent claimed therapeutic benefits in these respects.

358, 360 (7th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974). Before the issuance of the Bittner patent, it would have been obvious to persons of ordinary skill in the sandal art to improve the comfort of an exercise sandal by lowering the position of the big toe pursuant to the teachings of Stroup and others. The discovery that the combination also had some orthopedic benefit would not make patentable that which was already in the public domain.

We therefore find the patent invalid for obviousness.

REVERSED.