PENNCO ENGINEERING COMPANY
v.
ALLIED CHEMICAL CORPORATION.
Civ. A. No. 3474.

United States District Court
E. D. Virginia,
Richmond Division.
April 10, 1964.

R. Colston Christian, Williams, Mullen & Christian, Richmond, Va., Zachary T. Wobensmith, II, Philadelphia, Pa., for plaintiff.

Lewis T. Booker, Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., Maxwell Barus, William K. Kerr, David W. Plant, Fish, Richardson & Neave, New York City, for defendant.

BUTZNER, District Judge.

This action concerns plaintiff's Nusbaum United States Patent 2,956,708, entitled "Dispensing Containers for Refrigerants". The issues framed by the pleadings are directed to the validity of the patent in suit and its alleged infringement by defendant in this District and elsewhere. The answer includes a counterclaim for a declaratory judgment that the patent is invalid and not infringed. Neither jurisdiction nor venue is disputed.

### Findings of Fact

1. Plaintiff, Pennco Engineering Company (hereinafter referred to as "Pennco"), is a Pennsylvania corporation, having its principal office and place of business at Philadelphia, Pennsylvania. Simon Richard Nusbaum, president of Pennco, assigned the patent to Pennco. Assignment and ownership of the patent are not disputed. Defendant, Allied Chemical Corporation (hereinafter referred to as "Allied"), is a New York corporation, having its principal office and place of business in New York and a regular and established place of business at Hopewell, Virginia, in this District.

2. The suit relates to containers for dispensing refrigerants used in the cooling systems of refrigerators and air conditioning equipment. Air conditioning is a rapidly growing industry, which has greatly increased the use of refrigerants in recent times. The principal refrigerants now in use commercially are chemicals known as fluorinated hydrocarbons. Until late 1949, du Pont had a monopoly on fluorinated hydrocarbon refrigerants, which it sells under its trademark "Freon". Thereafter, several other companies became manufacturers of fluorinated hydrocarbon refrigerants. One of these is Allied, which makes and markets refrigerants under its trademark "Genetron". Pennco does not manufacture refrigerants. It packages in its containers and distributes refrigerants purchased from du Pont.

3. Refrigerants are dispensed in metal containers under pressure sufficient to keep much of the refrigerant in liquid form. The containers are closed metal cylinders. A dispensing valve at one end is provided with an outlet for connection to a delivery hose or pipe leading to the system to be serviced. When a container is positioned so that gravity keeps liquid adjacent to the dispensing valve, liquid is discharged. When gas is adjacent to the dispensing valve, gas is discharged. Sometimes gas discharge is wanted and sometimes liquid discharge is desired. So, the practice is to place refrigerant containers in a position to discharge the contents in the proper form. It is inconvenient to hold or prop the containers in the inverted position which is required to dispense liquid. Pennco's container was designed to eliminate this inconvenience.

4. Neither Pennco nor Allied manufactures dispensing containers for refrigerants. The containers are purchased from companies such as Pressed Steel Tank Company which manufacture containers for holding and dispensing various gases under pressure for different uses.

5. The patent in suit issued October 18, 1960, on an application filed October 27, 1958. It relates to details of construction of metal containers useful for holding refrigerant under pressure and discharging it as a liquid or gas at the user's option. The Nusbaum Patent No. 2,956,708, discloses and claims dispensing containers for pressurized refrigerants for selectively dispensing such refrigerants in liquid or gaseous form. Manual operating access is available to the valve from the side when the valve is disposed downwardly for liquid refrigerant dispensing and the container is supported on a collar or end extension of the cylinder.

6. The container illustrated and described in the patent is a metal cylinder closed at both ends, with a dispensing valve located centrally on the top end. The dispensing valve illustrated and described in the patent has a lateral outlet

for connecting it to a delivery hose or pipe to the equipment to be serviced, and a hand wheel for operating the valve manually.

7. A collar of lesser diameter than the cylinder is welded or "secured in any desired manner" to the top end of the cylinder and surrounds the discharge valve, except for an opening at one side. This opening is described as large enough and the collar high enough for an operator's hand to reach inside the collar to turn the vave handle to open and close the valve when the container is inverted and standing on the collar. A slot in the collar on the side opposite the opening serves as a handle for carrying the container. The top collar construction is described as being useful as a stand for the container when inverted, for protecting the valve from accidental knocks and for providing a carrying handle.

8. The bottom of the container described in the patent has a collar or "foot ring" on which the container stands in the upright position when gas delivery of its contents is wanted. The bottom collar serves also to protect from accidental damage a fuse plug in the bottom of the container. The bottom collar is larger in diameter than the top collar and has relative dimensions permitting the containers to be stacked with the bottom of each upper container resting on the top collar of the container below it, without interfering with the fuse plug in the bottom of the upper container.

9. The validity of patent is not based upon the following features of the refrigerant container (all of which were known to the industry):

The use of a container to dispense refrigerant in either liquid or gaseous form;

The use of a container in the upright or inverted position;

The metal cylinder or its various sizes;

The valve;

The hand wheel for operating the valve;

The collar on the top of the container which served to protect the valve;

The handhold in the collar for carrying the container;

The fuse plug;

The foot ring for protection of the fuse plug and for stacking.

10. The principal inventive concept claimed by the plaintiff is the relationship of collar height to valve height which permits manual access to the valve for dispensing liquid refrigerant when the container is inverted, the valve is down and the collar supports the container. This was achieved by lengthening the collar. A related concept is access through the handhold for the connectors.

11. The patent has five claims. Principal reliance is placed upon claims 1 and 5.

12. Claim 1, separated into parts and with letters added for convenience of discussion, reads as follows:

"1(a) In a dispensing container for pressurized dispensing refrigerant in liquid form,

"(b) a fluid tight container having opposite ends,

"(c) at least one of said ends having a longitudinally axially disposed extension therefrom of lesser diameter than the container for supporting said container with said one end downwardly disposed for liquid refrigerant dispensing,

"(d) said extension having a side access opening therein,

"(e) and a dispensing valve disposed within said extension and mounted on said one of said ends,

"(f) said dispensing valve having a discharge connection extending sidewise with respect to the longitudinal axis of the extension and towards said access opening,

"(g) said valve having an operating handle spaced inwardly

from the outer marginal edge of the extension,

"(h) said extension being of a length with respect to the length of said valve to permit manual access to said valve handle through said access opening with said container supported by said extension and with said handle downwardly disposed."

13. Claim 5, separated into parts and with letters added for convenience of discussion, reads as follows:

"5(a) In a dispensing container for selectively dispensing pressurized refrigerant in liquid or gaseous form,

"(b) a fluid tight container having an interior liquid containing space and having exteriorly disposed thereon and secured to each of its opposite ends and extending therefrom a longitudinally axially disposed supporting collar,

"(c) each of said collars having a supporting end face for supporting said container with a selected one of said ends downwardly disposed,

"(d) a dispensing valve communicating with said space and an operating member therefor mounted on one of said ends,

"(e) said dispensing valve having a discharge outlet for the connection of delivery piping,

"(f) one of said collars supporting said container for liquid discharge from said space and the other of said collars supporting said container for gas discharge from said space."

14. Nusbaum's claim 2 differs from claim 1 in that (1) it specifies "an operating *portion*" for the valve whereas claim 1 specifies an "operating *handle*" for the valve, (2) it specifies "manual access to said valve *portion*" whereas

claim 1 specifies "manual access to said valve *handle*," and (3) with respect to the collar it specifies "a longitudinally axially disposed collar" whereas claim 1 specifies "a longitudinally axially disposed extension therefrom of *lesser diameter* than the container". In all other respects, claims 1 and 2 are the same.

15. Claim 3 of the patent in suit differs from claims 1 and 2 and is like claim 5 in being directed to containers for dispensing refrigerant in either gas or liquid form. Also, claim 3 refers to both the top collar and bottom collar as being "*of different diameters*" from the cylinder. Also, claim 3 specifies that the side access opening in the collar extends from the end attached to the container to "the outer marginal edge" of the collar.

16. Claim 4 of the patent in suit differs from claim 3 by specifying that the top and bottom collars are not only of different diameters but also of lesser diameter than the container.

17. Defendant relies upon the following patents and publications anticipating the invention of the patent in suit:

(a) Belgian Patent No. 514,045, dated September 30, 1952, to Industrie Werke Karlsruhe, for dispensing purpose, cited by the Patent Office.

(b) Butane Propane News Catalog pages in 1953, 1954, 1955 and 1957 editions, not cited by the Patent Office.

(c) L. Underhill, U. S. Patent No. 2,234,458, dated March 11, 1941, not cited by the Patent Office.

18. Defendant also relies upon a propane pot of Green's Fuel of Florida to show prior public use.

19. Propane is a combustible hydrocarbon. It is dispensed from metal containers which are often called "propane pots". Containers for refrigerants and containers for propane bear many resemblances. Both are marked with the same Interstate Commerce Commission specification numbers. They may be similar in size and shape. Either may have a fuse plug or this safety device may be incorporated in the valve. Collars and

footrings are common to both. Many companies manufacture both. The art of making refrigerant containers is analogous to the art of making propane pots.

20. The chief difference between refrigerant containers and propane pots is the use to which each is put. They are not used interchangeably. The valves differ and consequently the valve spuds are of different diameter. Propane is dispensed only when the pot is in an upright position. Since a propane pot is not used in an inverted position for dispensing liquid, the relationship of the height of the valve to the height of the collar for providing manual access is not critical. The collar of a propane pot need be only high enough to protect the valve.

21. The 1952 Belgian patent entitled "Gas Cylinder, Preferably for Storage of Propane" was the most pertinent prior art cited by the Patent Office examiner. It illustrates and describes several forms of protective collars welded to the valve end of the cylinder to protect the valve and allow access to operate it. The Belgian patent, like the Nusbaum patent, describes the collar as being of "lesser diameter" than the cylinder, allowing it to fit inside the bottom collar or foot ring of another container for stacking purposes. It describes the collar construction as useful for protecting the valve and for carrying the container. The valve is shown as having an outlet connection and a handle for operating the valve by hand. The Belgian patent states that the top edge of its welded collar extends beyond the valve. The Belgian patent points out that the top collar extension, permitting the operation of the valve in inverted position, is useful because it makes possible rapid filling of the cylinders without requiring a special frame to support the cylinder.

22. The pages of the Butane-Propane News Catalog relied upon by defendant show propane pots, some with and some without valves. The illustrations and descriptions in the BPN catalogs were published prior to the time when Nusbaum first developed his container and more than a year prior to the filing of his patent application. They established that all structural details of the container of the Nusbaum patent were found in prior propane pots. These include collars of sufficient height to provide ample hand access to the valves. They of course do not illustrate propane pots in an inverted position for dispensing contents.

23. The Patent Office examiner in considering the Nusbaum Patent application did not cite any pages of the BPN catalog.

24. The 1941 Underhill patent, No. 2,234,458, relates to pressure containers and refers specifically, at page 1, column 1, lines 9–13, to containers for "Freon", the refrigerant to which the patent in suit also refers. The Underhill patent illustrates and describes a container with a valve centrally located on top, and used selectively in the right side up or in the upside down position. In the upside down position, the container is supported on a collar attachment. The hand wheel dispensing valve of the Underhill container, like the hand wheel dispensing valve of defendant's containers, has the built-in safety device, eliminating the need for a fuse plug in the body of the container.

25. Underhill's patent explains that his collar device replaces the old protective cap for the standard dispensing valve and provides "an attachment base for standing the container with the valve inverted." The patent specification points out that the device "permits the valve to be used without removing the device" and protects the valve "while in use". Underhill's protective collar attachment is described as one which "completely surrounds and encloses the valve which is provided with the usual safety device and threaded outlet" and in many instances with a hand wheel. At page 1, column 2, lines 44–51 Underhill states also that his collar attachment provides "in combination, a valve cap or protective casing, a stand or base, handle means for transporting the container."

26. Underhill refers to the difficulties with earlier containers, and the advan-

tages of his collar attachment, pointing out "Also, in empting the (earlier) container, if it contains liquid it is necessary to tip the container as obviously it cannot be inverted, as is the container shown in Figure 3." The Underhill patent specification also states "If desired, the containers can be stood on end with a valve inverted as shown in Figure 3 which permits the entire contents thereof to be withdrawn without tipping the container or providing any special means of holding the same." Underhill's patent drawings, including Figure 3 which illustrates the container in the upside-down position, show access openings with plenty of room to operate the hand wheel while the container is in use.

27. In considering the Nusbaum application for the patent in suit, the Patent Office examiner did not cite the Underhill patent.

28. Green's Fuel of Florida propane pot of the type shown in the BPN catalogs was in commercial use prior to the date of Nusbaum's alleged invention. The height of the collar on that propane pot was sufficient to permit access to the hand wheel of the valve when the cylinder was inverted. This evidence was not before the Patent Office examiner. The Green's Fuel of Florida propane pot was used only for liquified petroleum gas, had a relief valve setting for liquified petroleum content, and never contained any other material, and specifically never contained a refrigerant. No useful purpose would be served by turning the cylinder upside down and opening the valve as the escaping combustible liquid would constitute a serious explosion hazard.

29. Nusbaum's first conception of containers of the kind claimed in his patent was in April or May, 1958. He knew at that time that propane pots were on the market for containing propane gas in liquid form under pressure and dispensing it as a gas for fuel purposes. He knew also that Pressed Steel Tank Company made and marketed both propane pots and refrigerant cylinders. He notified an officer of that company that

Pennco might want to order several thousand containers of a light, low cost construction, similar to propane pots, that could support themselves in either upright or inverted position to deliver refrigerant in gas or liquid form, and which would have hand access to operate the valve handle in the inverted position.

30. Nusbaum thereafter received from Pressed Steel Tank Company drawings of propane pots that could be adapted for use as refrigerant containers. He also received sample containers. Nusbaum determined that the 3¾ inch high collar, which was standard for Pressed Steel Tank Company's propane pot should be increased 1 inch in height to provide manual access to the valve when the container was inverted. He also specified that the handhold should be larger. Production drawings meeting Nusbaum's specifications were then made. They formed the basis for the drawings Nusbaum submitted in his patent application.

31. Pennco's refrigerant container achieved immediate commercial success.

### Conclusions of Law

1. The Court has jurisdiction over the subject matter and the parties.

2. The presumption of validity of the patent, accorded by 35 U.S.C. § 282, is weakened because of the failure of Patent Office to cite or consider the 1941 Underhill patent 2,234,458. Triumph Hosiery Mills, Inc. v. Alamance Industries, Inc., 299 F.2d 793 (4th Cir. 1962).

3. The manner in which Nusbaum made the refrigerant containers does not negative patentability, 35 U.S.C. § 103. It does, however, demonstrate the close relationship between the container and the prior art. Cf. Allen v. Standard Crankshaft & Hydraulic Co., 323 F.2d 29 (4th Cir. 1963).

4. United States Patent No. 2,956,708 is invalid in its entirety on the following grounds:

(a) The slight modification of a propane pot to adapt it for the dispensing of

refrigerants does not constitute invention. An old device is not made patentable by applying it to a new use. General Electric Co. v. Jewel, Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43 (1945); American Monorail Co. v. Parks-Cramer Co., 245 F.2d 739 (4th Cir. 1957).

(b) The difference between Pennco's refrigerant container and the prior art (propane pots) as disclosed by Underhill, United States Patent No. 2,234,458, dated March 11, 1941; Industrie Werke Karlsrube, Belgian Patent No. 514,045, dated September 30, 1952; Pressed Steel Tank Company drawings; Butane-Propane News Catalogs; and the Green's Fuel propane pot "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

■ 5. The lack of invention is not doubtful. The commercial success of Pennco's containers, therefore, does not afford a basis for patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127 (1950); American Monorail Co. v. Parks-Cramer Co., 245 F.2d 739 (4th Cir. 1957).

6. The complaint should be dismissed and judgment entered for defendant on the counterclaim.

7. Plaintiff, its officers, agents and those in privity with it, and each of them, should be enjoined and restrained from harassing with threats of infringement against, and from instituting any suit for infringement against, defendant or anyone in privity with defendant, including its suppliers and customers, under United States Patent No. 2,956,708.

8. Defendant should be awarded costs.

Counsel are requested to submit a decree consistent with this memorandum.