**COOK ENGINEERING & ELECTRONICS, INC., Plaintiff,**

v.

**HICKORY FOUNDRY & MACHINE COMPANY, Defendant.**

Civ. No. 478.

United States District Court
W. D. North Carolina,
Statesville Division.

Heard March 2, 1964.

Decided July 2, 1964.

Charles B. Park and Joseph H. Heard, Charlotte, N. C., for plaintiff.

Channing L. Richards and Dalbert U. Shefte, Charlotte, N. C., for defendant.

CRAVEN, Chief Judge.

This case involves validity and infringement of U. S. Patent No. 3,015,600, entitled "Plastic Film Cutter and Sealer", issued January 2, 1962, and owned by plaintiff at all times since its issuance. Pursuant to 28 U.S.C. § 1338 (b), defendant has counterclaimed for unfair competition.

Simultaneously with the filing of this opinion, there have been filed detailed findings of fact and conclusions of law. Only facts sufficient to permit discussion are recited in this opinion.

The Cook patent relates to a machine invention comprising a combination of elements for cutting and sealing thermoplastic film, and particularly for sealing the open end of a loaded thermoplastic bag and simultaneously trimming off the excess material above the seam. The embodiment of the invention demonstrated at the trial had an upper clamping jaw fixed between a pair of support arms that are pivoted to clamp the upper jaw against the fixed lower jaw; a hot wire movably supported in the upper jaw so as to move from the upper jaw into the lower jaw to cut and heat seal thermoplastic material clamped between the jaws; an air blower arranged to blow air along the lower jaw in response to unclamping of the jaws to blow off waste material. The machine was operated by pressing a foot pedal connected by a double acting lever to the

support arms and to the hot wire structure with the lever being spring biased to act first against the support arms to clamp the jaws and then to act against the hot wire structure to move the hot wire from the upper jaw to the lower jaw to cut and heat seal the clamped thermoplastic material. In summary, that which is claimed is a combination of a pair of jaws adapted for clamping, with a hot wire in one jaw adapted to move from one jaw to the other in response to clamping, and means for blowing air across the jaws in response to unclamping.

## VALIDITY

Viewed in the light of the prior art, the Cook patent either lacks "that impalpable something which distinguishes invention from simple mechanical skill" [1] or must be so narrowly construed as to be of no practical value to the inventor. To affirm the validity of the patent, on the facts of this case, and deny infringement is to give to plaintiff the semblance of monopoly while actually denying the substance of it.

Plaintiff's Exhibit 8 is illustrative of the prior art and is *admitted by the plaintiff to be unpatentable*. The importance of this exhibit cannot be overemphasized. It is a machine having an upper clamping jaw fixed to a pair of pivoted support arms that were operated by a foot pedal linkage to clamp the upper jaw against a fixed lower jaw; within the upper jaw there was a hot wire which was manually pushed down so as to enter the lower jaw to cut the thermoplastic sheets. The *only* differences between this admittedly unpatentable machine (plaintiff's Exhibit 8) and the second embodiment disclosed in the patent is a mechanical linkage to replace the manual operation of the hot wire and mechanical means for blowing away the waste material.

Can this be invention—to substitute a linkage to the foot pedal to pull the hot wire down instead of pushing it down by hand—and to add an air blower? To mechanize a manual operation is usually a "good idea, but scores of progressive ideas * * * are not patentable".[2]

The resemblance of plaintiff's Exhibit 8 (the prototype machine) to the defendant's machines and to the plaintiff's machines said to embody the patent is remarkable. The significant features of all of the machines are the double clamping jaws and the hot wire. It would occur to no one but a patent lawyer that plaintiff's Exhibit 8 differs sufficiently from plaintiff's Exhibit 9 so that the one is patentable and the other is not invention. Five times the Patent Examiner rejected the application. Six times the plaintiff persevered and ended up with something. Having seen what the patentee did *not* get (double clamping jaws and mechanized hot wire), it remains to state what was obtained. That is not easy.

Apparently it is the specific structural relationship of a first means for clamping and a second *separate* means actuated responsively to the clamping to move the heated wire. As if this were not enough, there is added the responsive blower actuated by the unclamping. Plaintiff admitted at the trial that Nye U. S. Patent No. 2,627,213 anticipated plaintiff's Exhibit 8, but took the position that Nye does not disclose operation of the hot wire in response to clamping and does not disclose any air blowing means. But Nye does teach that the jaws clamp first and only after clamping does the hot wire move from one jaw to the other to accomplish cutting and heat sealing. This appears to be the same responsive action. Plaintiff strenuously urges that the Nye patent is distinguishable because its operation is repetitive whereas Cook is responsive. This is a distinction without a difference. The Nye machine is repetitive. So also is one of plaintiff's own machines (plain-

---

1. McClain v. Ortmayer, 141 U.S. 419, 427, 33 S.Ct. 284, 35 L.Ed. 800, 803 (1891).

2. Great A & P Tea Co. v. Supermarket Equipment Co., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, 167 (1950).

tiff's Exhibit 17), but the action of the hot wire is responsive to clamping in Nye *and* in Cook. The prior art is replete with patents showing various types of cutters combined with clamping members wherein the cutter is operated after clamping and may properly be said to be responsive. Chandler U. S. Patent No. 2,244,550; Iknayan U. S. Patent No. 2,251,135.

Iknayan also teaches blowing in response to unclamping. The Patent Office did not have before it either Iknayan or Heyes U. S. Patent No. 1,793,089 or any other similar prior art disclosures of responsive blowers. In the prototype machine (plaintiff's Exhibit 8) the operator simply blew away with his mouth the accumulation of waste. Is it invention or an obvious expedient to one skilled in the art to devise an automatic mechanical blower? Plaintiff's own expert said: "At the present time, with what we know about it and with these patents here, I think we'd say it was obvious." But the patents—teaching what was known about it—were available at the time of invention.

Nye U. S. Patent No. 2,248,248, Kenny U. S. Patent No. 2,305,010 and Southwick U. S. Patent No. 2,405,675 taught jaw clamping action in the process of heat sealing thermoplastic bags. Thompson U. S. Patent No. 2,649,672 taught the use of a hot wire moving through thermoplastic sheets for cutting and heat sealing. Cook combined Thompson and Nye as exemplified in plaintiff's Exhibit 8, but the combination is admittedly non-patentable. Adding a responsive blower is not invention. None of the elements perform or produce any new or different function or result than that theretofore performed or produced by them: the jaws clamp, the hot wire cuts, and the blower blows as they always have done. Such an aggregation is not invention. Only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Great A & P Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, 166 (1950).

Defendant has cited twenty-seven prior art patents—six more than were cited by the defendant in Reynolds, et al. v. Whitin Machine Works, 167 F.2d 78 (4th Cir.1948), in which case Judge Parker said that citation of so many prior patents (twenty-one) almost always means either that none of them is in point or that there have been prior attempts to solve the problem which have not met with success. But, it does not take all twenty-seven to piece together the Cook combination: Nye, Thompson, Iknayan and Chandler do it sufficiently. The rest are for emphasis. And Cook's is not the only solution to the problem. There are other jaw sealers on the market. Cook's own licensee sells another one. Also, it is significant, unlike the situation in Reynolds, et al. v. Whitin Machine Works, supra, that many of the prior patents cited are not in different fields of entirely different character, but, instead, relate directly to heat sealing thermoplastic material. Some of the patents cited had been considered by the Patent Office, but it is important to note that some had not; notably, Iknayan, Thompson and Chandler.

It is sometimes said that the more investigation by the Patent Office the stronger the presumption of validity. Gulf Smokeless Coal Co., et al. v. Sutton, Steele & Steele, et al., 35 F.2d 433, 437 (4th Cir.1929). But logically this is a two-edged sword. Five rejections over a four year prosecution period may strengthen the presumption of validity *or* make suspect the final allowance. The latter inference finds some support in common sense—certainly as to any broad scope necessary for the patent to have any real value.

Plaintiff argues that if there be any doubt as to the validity of the Cook patent it must be resolved in favor of the plaintiff on the ground of commercial success. Cook initially sold fifteen machines at a price of $222.50 each, resulting in a total profit of over $2,000.00. Thereafter, he found a manufacturing licensee who took an exclusive license but without any obligation to pay any minimum. Over a

seven year period, 1,200 machines have been sold at a total retail price of over $280,000.00, and some $43,000.00 in royalties have been paid to Cook. Thirteen thousand dollars was spent on advertising. Except for Cook's exclusive manufacturing licensee, no other member of the industry has ever paid tribute to Cook. Efforts have been made to get other manufacturers to take a license, without success. This much commercial success proves that Cook has a good machine. It does not prove that he has a good patent. The two are not synonymous. Nor is it always necessary to have a patent in order to be commercially successful! See Allen v. Standard Crankshaft & Hydraulic Co., 210 F.Supp. 844; aff'd. 323 F.2d 29 (4th Cir.1963).

■■ In rewarding useful invention, the "rights and welfare of the community must be fairly dealt with and effectually guarded". Kendall v. Winsor, 21 How. 322, 329, 16 L.Ed. 165 (1859). Recently, in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), Mr. Justice Black had occasion to speak with reference to obtaining a patent: "To begin with, a genuine 'invention' or 'discovery' must be demonstrated 'lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art' "—citing Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 92, 62 S.Ct. 37, 86 L.Ed. 58 (1941). Cook's contribution is at most a technological advance not amounting to invention. The patent is invalid

### INFRINGEMENT

In the Cook machine, the upper jaw is fixed to the support arms and the hot wire carrier is resiliently mounted in the upper jaw and is responsive to jaw clamping, while in the defendant's machines, there is a reversal of connection whereby the support arms are fixed to the hot wire carrier and the jaw is resiliently mounted on the hot wire carrier. Both are well illustrated by plaintiff's

Exhibit 34. In both the patented machines and all of defendant's machines, regardless of the connection, when the actuating mechanism (foot pedal or air cylinder) is activated, the support arms first bring the upper jaw down into clamping engagement with the lower jaw; the hot wire then moves out of its position within the upper jaw and through the clamped thermoplastic material; and then, in response to unclamping (by movement of the upper jaw away from the lower jaw), a blast of air is directed along the lower jaw to blow away the waste thermoplastic material. Beyond question, defendant's reversal of connections is the full equivalent and invokes the doctrine of equivalents. Graver Tank & Manufacturing Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Marvel Specialty Co. v. Bell Hosiery Mills, Inc., 300 F.2d 164 (4th Cir.1964). But, it is not even necessary to invoke the doctrine. Claims 1, 4, 11 and 13 read literally, word for word, on each of defendant's Models HF and FJ machines, and claim 7 reads literally, word for word, on defendant's Model H machine. There is no question but that defendant's machines infringe the patent if given the broad scope asserted by plaintiff, and the patent is utterly worthless unless accorded such scope. Infringement is clearly established if it be assumed that the patent is valid.

### UNFAIR COMPETITION

By way of counterclaim, the defendant complains that the plaintiff, by filing this lawsuit, is using the patent as an economic weapon to force its competitors, beginning with the defendant, to enter into licenses or cease manufacture and sale of bag sealing devices, and that instituting the suit for such a purpose constitutes an unlawful harassment and coercion of the defendant so as to amount to unfair competition. But it has already been demonstrated that plaintiff's and defendant's machines are at the very least closely similar. Is it not the very purpose of a patent to do that of which

plaintiff complains: force competitors to cease manufacturing or to take licenses?

Patent litigation can, of course, be very costly, and the threat of it can be a fearful weapon. But, on the facts of this case, it is not unfair competition to assert an invalid but lawfully issued patent against an infringer. For this reason it is primarily for the Patent Office to protect from monopoly without invention. Protection in the courts, if it comes at all, is generally too little and too late and much too expensive.

Costs will be taxed against the plaintiff. 35 U.S.C. § 284.

It is requested that counsel prepare an appropriate judgment.

