Paul B. Bell, Charlotte, N. C. (Charles B. Park, III; Joseph H. Heard; and Parrott, Bell, Seltzer, Park & Heard, Charlotte, N. C., on the brief), for appellant and cross-appellee.

Dalbert U. Shefte, Charlotte, N. C. (Channing L. Richards, Charlotte, N. C., on the brief), for appellee and cross-appellant.

Before HAYNSWORTH and BRYAN, Circuit Judges, and THOMSEN, District Judge.

**COOK ENGINEERING AND ELEC-TRONICS, INC., Appellant and Cross-Appellee,**

v.

**HICKORY FOUNDRY & MACHINE COMPANY, Appellee and Cross-Appellant.**

**No. 9585.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 10, 1964.

Decided Jan. 4, 1965.

PER CURIAM:

Patent No. 3,015,600 issued January 2, 1962, owned by the Cook Engineering and Electronics, Inc. and relating to the sealing of plastic bags was declared invalid, in Claims 1 and 4–14, by the District Court in the owner's infringement suit against Hickory Foundry & Machine Company. Anticipation in the prior art and obviousness of concept were the grounds of the judgment. We affirm.

Descriptive of the typical and fundamental embodiment of the patent is Claim 4:

"4. An apparatus for simultaneously trimming and heat-sealing the open end of thermoplastic bags made from sheets of thermoplastic material comprising a first fixed clamp-

ing jaw, a second movable clamping jaw movable into and out of engagement with said first jaw, a heating element mounted for movement in said second clamping jaw, support arms on said second jaw, means for moving said support arms to move said second jaw into and out of clamping engagement with said first jaw, and means operable in response to movement of said second jaw into clamp-engagement with said first jaw for moving said heating element from said second jaw, through said thermoplastic sheets and into said first jaw."

Concededly it is a combination patent—its constituent elements all well known—and concededly, too, it was useful. The description just quoted sketches the "sub-combination" model.

Inventiveness and novelty are asserted for it in a feature called "responsiveness". This attribute appears in the performance of two successive functions in a single down-stroke of a single lever actuated, through linkage, by depression of a foot pedal, the second function being "responsive" to completion of the first. The movement first pulls the upper jaw down against the lower, fixed and mating jaw, so as to form a clamp to hold the material in place while forcefully pressing its edges together, the initial function. The same downward movement, when continued, forces a hot horizontal wire, out of a horizontal groove in the upper jaw, down upon and through the material's edges and thence into a receiving groove in the lower jaw. The effect is to fuse the edges and at the same time sever the material with a trim edge. This is the second function. Note that it does not begin until the clamping is effectuated but is immediately responsive thereto.

Cook urges that this "responsive relationship between clamping (by the jaws) and cutting and sealing (by the heated wire)" insured "reliability of clamping before cutting". This guaranteed an uncluttered seal. It also assured,

Cook continues, "ease and speed of operation".

To this one-two punch or follow-up action, comprising the "sub-combination", another feature is added to make the "overall combination" embodiment. The addition consists of a means of directing an air stream along the lower jaw, in response to the lifting of the upper from the lower jaw, to blow away the waste material.

The rapidity of production, the appellant argues, is the manifestation of the machine's novelty and inventiveness. Marked deficiencies in the current techniques—the manual application of Scotch tape, the bar sealer, the jaw sealer and the "impulse" sealer—have been slowness of operation with low output and an untidy seam. These shortcomings were met by the Cook patent, it is said. We may acknowledge this realization without according patentability to the attainment.

The idea and practice of uniting the edges of thermoplastic sheets by melting them with a hot wire while under pressure is, admittedly, not new. Nor is there novelty in cutting compressed material by a wire, whether hot or cold. Further, with the District Court we think, too, that the means projected by Cook to achieve this result, as well as the use of air to remove the scrap, are not original, having been anticipated by several patents. Their characteristics and development also disclose to us, as to the District Judge, that the "responsiveness" either in the application of the wire or in the air blowoff, is nothing more than "would have been obvious * * * to a person having ordinary skill in the art" within the ban of 35 U.S.C. § 103. While the Judge may have reached his conclusion, as the appellant complains, by starting from an intermediate and experimental model, in the end he appraised the final machine in its entirety as something foreseen by earlier patentees and craftsmen. In any event he was justified in using the transitory model as a reference point in his reasoning.

The illustrations we have in mind of the prior art are the J. B. Thompson Patent No. 2,649,672, issued August 25, 1953, showing the use of a hot wire to cut thermoplastic sheets; the N. H. Nye Patent No. 2,627,213, issued February 3, 1953, exhibiting two jaws closing upon the material, followed by a hot wire coming out of one of the jaws to fuse and cut the material, although done in a vertical plane; F. J. Chandler Patent No. 2,244,550, issued June 3, 1941, containing responsive action, that is perforating needles at once descending into material upon completion of clamping action; and the A. N. Iknayan Patent No. 2,251,135, issued July 29, 1941, displaying an air blast to expel the unwanted residual.

These predecessors in the art, as well as others also pertinent, have been precisely delineated, explained and matched with the suit patent by the District Judge.* A description and tracing of them by us would be useless repetition. We agree with his analyses and identification of the present with its antecedent patents. He thus tellingly rebuts the statutory presumption of the patent's validity under 35 U.S.C. § 282. There is not here the doubt of validity to be resolved in favor of the patent from the admission of patentability inherent in the doubter's imitation of it, or from the operational and any commercial success of the product. Cf. Pennco Engineering Company v. Allied Chemical Corp., 235 F.Supp. 625 (E.D.Va. April 10, 1964), aff'd. per curiam 339 F.2d 260 (4 Cir. 1964); Keiser v. High Point Hardware Company, 311 F.2d 850, 853 (4 Cir. 1962); and see Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 40 F.2d 910, 913–914 (4 Cir. 1930). Universal Incorporated v. Kay Manufacturing Corp., 301 F.2d 140 (4 Cir. 1962).

With invalidity found in the twelve litigated claims of the patent, the issue of their infringement becomes academic. We believe an award of counsel fees to Hickory is not called for.

Affirmed.

* Cook Engineering & Electronics v. Hickory Foundry & M. Co., D.C., 231 F.Supp. 271 (1964).